## UNITED STATES DISTRICT COURT
## SOUTHERN  DISTRICT OF FLORIDA

### CASE NO.  15-20293-CR-ALTONAGA

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

KIRK CHAMBERS,

      Defendant,

---------------------------------------/

### DEFENDANT KIRK CHAMBERS' RESPONSE  TO THE PRESENTENCE
### INVESTIGATION REPORT &
### REQUEST FOR A NON-CUSTODIAL  SENTENCE

The defendant, Kirk Chambers, by and through his undersigned counsel, and pursuant to

U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), (e)(2) and (f), and the Fifth and Sixth

Amendments to the United States Constitution, respectfully files his Response to the Presentence

Investigation Report (PSR) and Request for a Non-Custodial  Sentence and as grounds therefore,

states as follows:

### I.  INTRODUCTION:

Kirk Chambers is a 41 year old native of St. Catherine, Jamaica, who came to the

United States at age 14 and became a citizen a few years later.  He joined the Navy after high

school and served honorably for 10 years.  During those years, he completed tours in Europe and

the Middle East and was part of the military police for much of his time.

After the Navy, Mr. Chambers joined the Florida Highway Patrol as a trooper and, until his discharge more than 10 years later, in March 2015, due to the instant offense, he served without incident.  The job required he face the most serious of dangers on the highways and manage some of the most horrific accidents and tragedies, all for an annual salary of roughly $41,000.

Without making excuses, but as an explanation, Mr. Chambers' involvement in the instant offense was not motivated by greed. [1]  Once Mr. Chambers' salary as a trooper  was reduced by insurance, taxes, and $1150 a month in child support, he was left with exactly $1961.37 a month to live on.[2]  He could not get by and, hence, he made a foolish mistake.  He has now lost his career, his pension, his marriage, and what little money he had left.  He has already experienced months of home confinement/electronic monitoring while on pretrial release, and he is aware he will now remain a convicted felon for the remainder of his life.  However, with that said, Mr. Chambers immediately accepted responsibility and began his assistance with Government agents, all before retaining counsel.  He is profoundly remorseful and is hopeful the Government will file a §5K1.1 and/or 18 USC §3553(e) motion recognizing his cooperation.

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007,   and

---

[1]  We believe  Mr. Chambers earned no more than $40,000 during the instant offense.

[2] DE 1

Amendment 741 of the Sentencing Guidelines, effective November 1, 2010.)   First, the Court is to determine the *advisory* guideline range. With that said, Mr Chambers agrees the guidelines applied in the PSR are accurate.  The applicable section is §2C1.1, the total offense level is 23, and as a first-time offender, his *advisory* guideline range is 46 to 57 months.

Second, the Court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range. As before *U.S. v. Booker,* 543 U.S. 220 (2005), the court is to depart when it is warranted under the facts and circumstances of a particular case. "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered," *U.S. v. Jordi,* 418 F. 3d 1212, 1215 (11th Cir. 2005).  Although Mr. Chambers is hopeful the Government will file a §5K1.1 and/or 18 USC §3553(e) motion recognizing his substantial assistance (see paragraph 8 of written Plea Agreement),  the PSR fails to identify any additional factors that may warrant a downward departure from the *advisory* guideline range.  Although Mr. Chambers, through counsel, believes such factors do exist, he will ask this Court to consider those factors as variances under the sentencing factors of 18 USC §3553 in fashioning a *reasonable but not greater than necessary sentence* in his case.

Lastly, the Court is to consider all of the sentencing factors of 18 USC §3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set forth in 18 USC §3553(a).   As set forth more fully below, Mr. Chambers, through counsel,  believes there are factors worthy of this Court's consideration.

## II.  OBJECTIONS TO THE PSR:

There are no objections to either the Offense Conduct section or the guideline calculations presented in the PSR.  Any objections/clarifications to non-sentencing issues in the PSR have been communicated directly with the probation office.

## III.  SENTENCING SUBMISSION & REQUEST FOR ALTERNATIVE SENTENCE:

Kirk Chambers has pled guilty to conspiracy to affect commerce by extortion under color of law,  in violation of 18 USC §1951(a).   He agrees with the guideline calculations presented in the PSR and is hopeful the Government will acknowledge his substantial assistance and file a §5K1.1 and/or 18 USC §3553(e) motion on his behalf.  Through counsel, he has not offered any additional argument for downward departure.

Notwithstanding the above, this Court is fully aware the guidelines have been *advisory* since 2005,  *U.S. v. Booker,* 543 U.S. 220 (2005),  followed by *Gall v. United States,* 128 S. Ct. 586, and *Kimbrough v. United States,* 128 S. Ct. 558, both decided on December 10, 2007. *United States  v. McBride*, 511 F. 3D 1293 (11TH Cir. 2007), made clear  that district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 USC §3553 factors.  To that end, Kirk Chambers  offers the following:

**Nature and Circumstances of Offense:**

**1.  Factual Proffer:**     In 2013, the FBI initiated its investigation into allegations that tow truck operators and collision centers in South Florida were paying bribes to law enforcement personnel.  Investigation identified Kirk Chambers as an FHP trooper known to accept bribes and co-defendant Guillermo Sepulveda, as a driver paying bribes to law

enforcement.   Mr. Chambers immediately, and prior to obtaining the undersigned attorney, signed a written Factual Proffer in which he has admitted that as an FHP trooper, he accepted bribes in return for allowing local tow truck operators to illegally solicit business from stranded drivers at accident scenes.  He was also paid to provide accident location information and discourage other "pirate" wreckers from operating in areas where paying pirates were operating.  During the time of the conspiracy, it is believed Mr. Chambers accepted no more than $40,000 in bribes.

2.   **Speedy Resolution of Criminal Liability:** On January 22, 2015**,** Mr. Chambers was confronted by agents of the FBI at the offices of his wife's property management business and presented with investigative photographs to identify.   He immediately identified the photographs, confessed his involvement in the conspiracy, provided a written statement,  and began his cooperation with the Government, and he did all of this without the advice of counsel.   Two months later, on April 24, 2015, an Indictment was returned naming Mr. Chambers and Mr. Sepulveda.   However, Mr. Chambers' acceptance of responsibility, his expressions of profound remorse, and his cooperation with FBI agents all occurred months earlier.  Mr. Chambers pled guilty to Count One of the Indictment on May 20, 2015  and sentencing is set for August 18, 2015.

3.   **Mr. Chambers' Substantial Assistance to the United States:** As stated, Mr. Chambers' cooperation with FBI agents was immediate, without first consulting an attorney, and continued even after he pled guilty.  Counsel will have more to say about the timeliness and extent of Mr. Chambers' cooperation at sentencing.

In *Roberts v. United States*, 445 U.S. 552, 558 (1980), before there were federal sentencing guidelines and before there was *Booker,* the court said that a defendant's cooperation demonstrates that the "defendant will transgress no more [and will] respond to rehabilitative efforts [and] not deem himself at war with his society."

Pursuant to paragraph 8 of the written Plea Agreement, Mr. Chambers remains hopeful the Government will file a §5K1.1 or  18 USC §3553(e)  motion before or at the sentencing hearing recognizing his substantial assistance.   However, with that said, Mr. Chambers does not face a mandatory minimum sentence in this case and, therefore, the filing of a § 5K1.1 motion is not necessary to reduce his sentence beyond any statutory minimum sentence.   The Court, under §5K2.0 or 18 USC §3553, may apply any weight to Mr. Chambers' cooperation in determining a "reasonable" sentence.    Indeed, this Court may consider *United States v. Knox*, 573 F. 3d 441 (7th Cir.  2009) (we agree with Davis that, as a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a  §5K1.1 motion); *United States v. Fernandez*, 443 F. 19, 33 (2nd Cir.  2006) (reasoning that a district court should consider "the contention that a defendant made efforts to cooperate even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F. 3d 1254, 1260-61 (10th Cir.  2005) (concluding that "a defendant's assistance should be fully considered by the district court at sentencing even if that assistance is not presented to a court

in the form of a § 5K1.1 motion"); *United States v, Murray*, 2005 WL 1200185 (S.D.N.Y. May 20, 2005 (unpub.) ("fact that defendant testified as witness for the government at time when he had nothing to gain provides support for his genuine contrition"); *United States v. Hubbard*, 369 F. Supp. 2d 146, 150 (D. Mass.  2005) (suggesting court can correct for government's bad faith not making motion under 3553(a)(2)(C); and *United States v. Khoury,* 62 F. 3d 1138 (9th Cir.  1995) (court may depart downward where government refuses to make § 5K1.1 motion because defendant went to trial although government initially offered to do so and where defendant's cooperation led to arrest of co-defendant).  Again, Mr. Chambers asks this Court to consider both the extent and the timeliness of his substantial assistance to the government in determining a "reasonable" sentence.

    **4.**    Pursuant to §2C1.1(a)(1), a base offense level 14, not 12, is applied to Mr. Chambers because he meets the definition of a "public official."  The same 14 levels applies to an elected official, such as a congressman or judge, as well as a director, or even just an employee of a local, state, or federal agency, as long as they were acting on behalf of that agency.  Admittedly, it also applies in this case to Mr. Chambers.

    Pursuant to §2C1.1(b)(3), a 4-level enhancement applies if the offense involved an elected public official or any public official in a high-level decision-making or sensitive position.  It has been applied to judges who accepted bribes, *U.S. v. Frega*, 179 F. 3d 793 (9th Cir.  1999), a state prosecutor, *U.S. v. Villafranca*, 260 F. 3d 374 (5th Cir.  2001), a juror who was solicited to take a bribe, *U.S. v. Snell*, 152 F. 3d 345 (5th Cir.  1998), the security chief at a prison, *U.S. v. Mack*, 159 F. 3d 208, 50 Fed. R. Evid. Serv. 281 (6th Cir.  1998), a police

captain, *U.S. v. Roussel*, 705 F. 3d 184 (5th Cir.  2013), the chief of a local housing authority's federal subsidy division, *U.S. v. Gatling*, 96 Fed. 3d 1511, 45 Fed. R. Evid. Serv. 1041 (D.C. Cir. 1996), a city councilman, *U.S. v. Paradies*, 98 Fed. 3d 1266, 46 Fed. R. Evid. Serv. 656 (11th Cir.  1996) and the assistant district director of the INS, *U.S. v. Reneslacis*, 349 Fed. 3d 412 (7th Cir.  2003).  There are many more public officials and those in high-level decision-making or sensitive positions in which this 4-level enhancement has been applied.  Admittedly, it also applies equally to a $41,000 a year FHP trooper who took no more than $40,000 in bribes from pirate tow truck operators.

Section 5K2.0(a)(2)(B) suggests that a downward departure may be warranted in the exceptional case in which there is a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant in determining the appropriate sentence.   In this case. Mr. Chambers received a total of 6-levels for his position as an FHP trooper.   Yet, had this case involved someone in a truly high-level decision-making position who had the ability to cause millions in losses, the same enhancements would be applied equally.

Section 2B1.1, comment. (n.20(C), instructs that "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense.  In such cases, a downward departure may be warranted."  In Kirk Chambers' case, his offense level has been determined by both §2C1.1 and 2B1.1.  However, this Court is well aware that every Guidelines Manual since 1987 has begun with the same basic approach; that the three objectives Congress sought to achieve in enacting the Sentencing Reform Act of 1984 was honesty, uniformity and proportionality in sentencing through a system that imposes

appropriately different sentences for criminal conduct of differing severity." [3]   With that said, Mr. Chambers, through counsel, asks this Court to consider this argument as a sentencing factor under §3553 to fashioning a reasonable but not greater than necessary sentence in Mr. Chambers' case.

5.   **Loss Addressed in 2015 Proposed Sentencing Guidelines Amendments:** This Court certainly recalls that on January 9, 2014 the Sentencing Commission first released its proposed 2014 amendments, entitled U.S. Sentencing Commission Seeks Comment On Potential Reduction To Drug Trafficking   Sentences and requested feedback on proposed amendments for the 2013-2104 amendments cycle.   As stated in its January 9, 2014 statement, the proposed amendments at that time included reductions to the guideline levels for federal drug trafficking offenses and was in response to the Commission's "priority of reducing costs of incarceration and overcapacity of prisons, without endangering public safety," as stated by Judge Patti B. Saris, Chair of the Commission.

The result,  effective November 1, 2014, was that  all drug table levels were reduced by 2-levels, except for the highest amounts requiring level 38.   However, most important, this Court will also recall that months before November 1, 2014, not only did many drug defendants awaiting sentencing request a two-level reduction due to this then "anticipated" amendment,  many  district court judges granted this request  under §3553.  Eventually, even the Government routinely agreed to it in written plea agreements, again, before the amendments became law.

---

[3] Chapter One, Part A(1)(3), the Basic Approach

With all that said, this Court is now asked to consider the proposed 2015 amendments, which were first submitted for public discussion on January 9, 2015,  as the Commission does every year at that time.  This year, the amendments  again focus on the Commission's "priority of reducing costs of incarceration and overcapacity of prisons, without endangering public safety" by examining the loss tables, just as it did the drug tables last year.

At page 50 of the Proposed Amendments for the 2014-2015 Amendment Cycle, entitled "Inflationary Adjustments,"   this proposed amendment is a result of the Commission's work in examining the overall structure of the guidelines post-Booker.  See   *United States v. Sentencing Commission,* Notice of Final Priorities, 79 Fed. Reg. 49378 (August 20, 2014).  As part of that work, "the Commission is considering whether to adjust monetary tables in the guidelines for inflation.   Congress has generally mandated that agencies in the executive branch must, every four years, adjust the civil monetary penalties they impose to account for inflation."

Subsequent to the Commission's January 9, 2015 submission, it released "U.S. Sentencing Commission   Adopts Economic Crime Amendments" on   April 9, 2015.   As always, "the amendments will be transmitted to Congress by May 1, 2015.  If Congress does not act to disapprove some or all of the amendments, they will go into effect November 1. 2015."   We believe the proposed amendments directly affect the guideline enhancement applied in paragraph 39 of Mr.  Chambers' PSR.

With that said, the PSR in this case adds 6-levels because the loss is more than $30,000 but not more than $70,000, §2B1.1(b)(1)(D).   The proposed amendment requires a loss of

more than $40,000 but not more than $95,000   to add  6-levels, § 2B1.1(b)(1)(D).[4]  Therefore,

under the proposed amendments, 4-levels, not 6-levels, would apply in this case.   Therefore,

consistent with the 2014 amendment which affected thousands of drug traffickers sentenced

last year, Kirk Chambers, through counsel, asks this Court for similar consideration for this

non-drug trafficking offense.   We ask this Court, under 18 USC §3553, to reduce his total

offense level from level 23 to 21.  As a first-time offender, the *advisory*  guideline range would

be 37 to 46  months.

**Defendant's History and Characteristics:**

   **1.  Kirk Chambers'  Personal and Family History**:    Kirk Chambers is a 41 year old

native of St. Catherine, Jamaica who has absolutely no prior criminal history.  He is the only

child  of Leroy Chambers and Ionie Thompson, the husband of Denise Smith since 2012, and

the  father  of 16  year old Kirethia, 7  year old Nevaeh, 6  year old Saxony and 3  year old

Jayden.[5]

   Mr. Chambers' parents never married.  His mother left him in Jamaica with his father

at the age of three, when his mother immigrated to South Florida for employment opportunity.

His father was the Deputy Superintendent of the St. Catherine Police Department and provided

Mr. Chambers with a good childhood and a private school education.   He attended church

every Sunday with his father.

   His father never remarried but fathered four more children who never lived with him.

---

   [4]  We believe the amount is no more than $40,000.

   [5] Mr. Chambers has four paternal half-siblings.

him.  At 13, Mr. Chambers wanted to join his mother in South Florida.  When he arrived, his mother was cleaning houses.  They lived in a two bedroom apartment and economic conditions remained modest, at best, for years. However, by high school, his mother was working as an L.P.N. and she bought her first home.

Mr. Chambers completed high school in June 1992 and joined the Navy in March 1993 "to see the world."  He married Pauline that same year (he was still only 19 years old) and became a father to her daughter by a previous relationship.  He was assigned as a ship serviceman on the USS Hancock and was stationed in Jacksonville until 1999.  However, he was deployed to Paris, Germany, Greece, Egypt, Israel, Colombia, Jordan and Turkey, and participated in Operation Enduring Freedom and drug-ops in the Caribbean during those years.

In 1999, Mr. Chambers was reassigned to Bahrain in the middle east..  By then, he and Pauline divorced, he met and married Arethea Chitty, and his first child, Kirethia, was born. He was assigned to the 5th Fleet, shore duty, military police (MP).  This assignment ended in 2001 and he remained in Jacksonville until he was honorably discharged in 2003.

After years as an MP in the Navy, Mr. Chambers became a Florida State Trooper in 2004.  He and Arethea had already divorced and during his years assigned to Marathon in the Florida Keys, he began a relationship with Rebecca Perez.  Three children were born to this relationship and Mr. Chambers became a father to Rebecca's fourth child.  In 2006, he was reassigned to Miami and he and his family moved north. His relationship with Rebecca ended in 2012 and he met and married Denise Smith later that year.

Mr. Chambers was first confronted by agents of the FBI on January 22, 2015.  He

immediately confessed and cooperated, all without the benefit of legal counsel.   Denise immediately expressed her anger with him and, during the second week of February, Mr. Chambers was served with divorce papers, left the home Denise paid for, and he returned to his mother's residence in Miramar.   He was officially terminated by the Florida Highway Patrol in March 2015.   Mr. Chambers' mother has since paid his living expenses, he drives his mother's automobile, and, for the first time, he has fallen behind on his child support payments.   He has been experiencing panic attacks several times a week and has battled insomnia since the commencement of this case.

   **2. Kirk Chambers' Family Ties and Responsibilities:** Mr. Chambers has one child with Arethea and three with Rebecca.   He has always willingly paid child support.   He was paying $700 a month to Arethea and $450 to Rebecca.   He visits with his children when he can and enjoys a close  relationship with all his children.   The following is from Rebecca's letter to this Court.

> "I share parental duties with Mr. Kirk Chambers.   Kirk has been a provider for all 3 (sic) them financially and emotionally.   He talks to them every morning and night before bed. This unfortunate situation  has weighed heavily on our kids. Kirk paid child support in the amount of $700 a month and was always on time.   Since he has lost his job he has not been able to provide for his children, which has put a financial struggle on me.   I am asking Your Honor to have leniency on Mr. Chambers for the sake of his children who need his support.   I am a mother of 6 and I have 1 full time job and had to get a second job just to somewhat male it without his support.   I am lucky to get 20 hours of sleep a week and now I have less time with my children."

> "Kirk is very involved with his children.   He gets them every summer and every other holiday.   And if in between the

kids want to see him then we plan and meet halfway. Kirk is a very loving and caring person. I am afraid of how this will emotionally hurt our children if he has to serve time. Please I am asking for your consideration when making a decision for the sake of our children."

Effective October 27, 2003, the Sentencing Commission amended §5H1.6 to limit the availability of departures for family ties and responsibilities. A new application note, §5H1.6, comment. (n.1(A)(i)-(iii), instructs the court to consider the seriousness of the offense, the defendant's involvement in that offense, and the members of the defendant's family. Further, comment. (n.1(B)(i)-(iv) requires the court to consider if   "the defendant's service of a sentence within the guideline range will cause a substantial loss of essential care-taking or essential financial support to his family," that "the loss of care-taking or financial support exceeds the harm ordinarily incident to incarceration for a similarly situated defendant," that "the loss of care-taking or financial support is one in which no effective remedial or ameliorative programs reasonably are available," and that "the departure will effectively address the loss of care-taking or financial support." Mr. Chambers asks this Court to consider that his young children need his support and to that degree, his situation warrants  a downward variance under 18 USC § 3553.

**3.  Kirk Chambers' Designation by the Bureau of Prisons as a Former Law Enforcement**

**Officer:**     Mr. Chambers was employed as a Florida State Trooper for more than 10 years and, as such, any prison sentence imposed in his case will present special attention by the BOP's Designation Center in Grand Prairie, Texas.   Designation requires the BOP to first address a defendant's security level.   To that, we believe Mr. Chambers is camp eligible.

Second, the BOP must find a facility to meet any special needs of an inmate; i.e., mental health, substance abuse counseling, etc.   We do not believe there are any in Mr. Chambers' case.   Third, the BOP attempts to place an inmate as close to his family and expected area of his eventual release as possible.   To that extent, " the Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community"  (see BOP p.s. 5267.07).   Finally, the BOP looks for available bed space to meet these objectives. Nonetheless, we believe the BOP will not designate Mr. Chambers close to his family, let alone in the state of Florida, because of his prior law enforcement position.   He may very well be designated a great distance from his mother, his children and the mothers of his children. Visits from family members may be few and far between during any period of incarceration imposed   on Mr. Chambers.

**Rehabilitation, Deterrence and Recidivism**:    In addition to this Court considering the sentencing factors of 18 USC §3553(a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant, this Court must also consider factors in 18 USC § 3553(a)(2), include fashioning a sentence which reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords deterrence, protects the public from further crimes by the defendant, and provides rehabilitation. To those ends, Mr. Chambers' cooperation with the Government has been immediate and extensive and he has agreed to forfeit what little he has left to the Government.   He has lost his career, his pension, his marriage, and for the first time his ability to support his children.   This, along with the

threat of incarceration and separation from his young family serve as an adequate deterrent to not only this defendant but anyone else thinking of committing a similar offense.  Again, we believe Mr. Chambers profited about $40,000 during his involvement in this offense.

In support,  the Sentencing Commission's  report, "Measuring Recidivism," offers a statistical analysis of the type of person most likely and least likely to re-offend.  The study demonstrates the risk of Mr.  Chambers  re-offending is not likely, and shows how important it is in a case not to impose a jail sentence.   The study demonstrated that (1) those who are married are less likely to recidivate than those who were not; (2) those who have not used illicit drugs are less likely to recidivate than those who did; (3) non-violent offenders are less likely to recidivate than violent offenders; (4) first time offenders are less likely to recidivate than repeat offenders; (5) those who are employed are less likely to recidivate than those who are not employed; and (6) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive straight jail.   But for recently being served divorce papers by his wife who remains very angry with him,  Mr. Chambers  falls into ALL of the categories of a person that will not likely recidivate.

**New Guideline Amendments:** Amendment 738 of the Sentencing Guidelines, effective November 1, 2010,  "is a result of the Commission's continued multi-year study of alternatives to incarceration.  The Commission initiated the study in recognition of increased interest in alternatives to incarceration by all three branches of government and renewed public debate about the size of the federal prison population and the need for greater availability of alternatives to incarceration for certain nonviolent offenders. See 28 USC §§ 994(g),(j)."

As part of the study, the Commission held a two-day national symposium at which the Commission heard from experts on alternatives to incarceration, including federal and state judges, congressional staff, professors of law and the social sciences, corrections and alternatives sentencing practitioners and specialists, federal and state prosecutors and defense attorneys, prison officials, and others involved in criminal justice.   See United States Sentencing Commission, Symposium on Alternatives to Incarceration (July 2008).   In considering the amendment, the Commission also reviewed federal sentencing data, public comment and testimony, recent scholarly literature, current federal and state practices, and feedback inn various forms from federal judges."

As a result,  the amendment expands Zones B and C of the Sentencing Table in Chapter Five.   "Specifically, it expands Zone B by one level for each Criminal History Category (taking this area from Zone C),  and expands Zone C by one level for each Criminal History Category (taking this area from Zone D).   Accordingly, under the amendment, defendants in Zone C with an applicable guideline range of 8-14 months or 9-15 months are moved to Zone B, and defendants in Zone D with an applicable guideline range of 12-18 months are moved to Zone C.   Conforming changes also are made to §5B1.1 (Imposition of a Term of Probation) and §5C1.1.   In considering this one-level expansion, the Commission observed that approximately 42 percent of the Zone C offenders covered by the amendment and approximately 52 percent of the Zone D offenders covered by this amendment  already receive sentences below the applicable guideline range."

Notwithstanding the latest amendment to the Sentencing Guidelines, Mr. Chambers also believes there is nothing to prohibit this Court from fashioning a "non-custodial" sentence.  Pursuant  to 18 USC §3561, there are no factors under the statute which prohibit a "non-custodial" sentence and under the guidelines, §5C1.1(d)(e) and (f) are *advisory*, as are all other guideline sections, post-*Booker*.  Indeed, in *United States v. Chettiar*, 501 F. 3d 854, 860 (8th Cir. 2007), the Court found that "switching zones" under §5C1.1 to achieve a non-custodial sentence amounted to a variance.  Therefore, Mr. Chambers believes this Court may sentence him  to a non-custodial sentence.

**Kinds of Sentences Available**:  A term of probation or its equivalent (time-served with a term of supervised release) for home-confinement, would allow Mr. Chambers to remain at home and continue to provide for his children. Indeed, courts have agreed, even pre-*Booker,* that the imposition of a probation sentence is warranted where a defendant's guideline range is similar, or even exceeds Mr. Chambers' *advisory*  guideline range.   See *United States v. White Buffalo*, 10 F. 3d 575, 577-78 (8th Cir.  1993)(upholding as reasonable a downward departure to a term of probation where guideline range is 18 to 24 months); *United States v. One Star*, 9 F. 3d 60, 61-62 (8th Cir.  1993)(upholding as reasonable a downward departure to a term of probation where guideline range is 33-41 months); *United States v. Sclamo*, 997 F. 2d 970, 972 (1st Cir.  1993)(upholding as reasonable a downward departure to a term of probation where guideline range was 24 -30 months); *United States v. Jagmohan*, 909 F. 2d 61, 65 (2nd Cir. 1990) (affirming district court's downward departure to a term of probation where guideline range was 15-21 months.

The Supreme Court explained in *Gall* that a probationary term is not insignificant -

"custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty....Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking...Most probationers are also subject to individual "special conditions" imposed by the court.  Gall, for instance, may not patronize any establishment that derives more than 50 % of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer."

*Gall,* 552 U.S.  38, 48 (2007).

Indeed, courts around the country post-*Booker/Blakely* have crafted probationary sentences as variances for first-time, non-violent offenses where it is clear the defendant will not re-offend and can positively contribute to society. *United States v. Tomko*, 562 F. 3d 558 (3rd Cir.  2009) (en banc)  (district court did not abuse its discretion in sentencing defendant to probation with a year of home detention, community service, restitution, and fine for tax evasion, rather than a term of imprisonment where guideline range was 12 to 18 months, in part because defendant's negligible criminal history, employment record, community ties, and extensive charitable works); *United States v. Rowan*, 530 F. 3d 379 (5th Cir.   2008)(where

defendant convicted of possession of child pornography and Guidelines were 46 to 57 months, sentence of five years supervised release not unreasonable under *Gall*); *United States v. Bueno*, 549 F. 3d 1176 (8th Cir.  2008)(where defendant possessed more than 70 kilograms of cocaine, and Guidelines were 108-135 months, sentence of probation with house arrest for five years not unreasonable noting that "offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty,"...and the district court observed in this case, Bueno is subject to house arrest during the entire five-year period of probation"); *United States v. Whitehead*, 532 F. 3d 991 (9th Cir.  2008)(district court did not abuse discretion when it sentenced the defendant to probation with "substantial amount of community service and house arrest" where defendant was convicted of supplying counterfeit access cards causing loss of $1 million dollars and guideline range was 41-51 months); *United States v. Ruff*,  535 F. 3d 999 (9th Cir.  2008)(defendant sentenced to three years supervised release (one-day in jail) where guideline range was 30-37 months and defendant had pled guilty to embezzling $650,000 from non-profit organization over the course of three years); *United States v. Coughlin*, 2008 WL  313099 (W.D. Ark. Feb. 1, 2008)(where defendant embezzled money and evaded taxes and Guidelines were 33-41 months, sentence of probation with home detention for 27 months was imposed in part because "home detention and probation can be severe punishments...hugely restrictive of liberty, highly effective in the determent of crime and amply retributive").    Mr. Chambers believes that after considering the nature and circumstances of the offense and his personal history and characteristics, this Court may impose a non-custodial sentence which includes a long period of home detention and allow

allow him to remain with his children and provide for their support.

**Latest Sentencing Statistics:** The United States Sentencing Commission's "Sourcebook" of Federal Sentencing Statistics for fiscal year 2014 provides statistics for 75,836 cases sentenced that year.   Specifically, as to 2,199 cases sentenced in the Southern District of Florida last year, 45.9 %, up from 37.5  % a year earlier,  received sentences below the *advisory* guideline range; 8.6 % because of substantial assistance motions, and 26.1 %, almost three times the number of Government sponsored motions, because of the sentencing factors of 18 USC §3553.   Nationally, the nature and circumstances of the offense and/or history and characteristics of the defendant were cited as reasons for a downward variance in 10,352 cases.  Indeed, district courts continue to exercise discretion,  post-*Booker*, and impose sentences below the *advisory* guideline range.

**Conclusion:**  Kirk Chambers  is well aware that in fashioning a "reasonable" but not greater than necessary sentence in his case, this Court must consider the nature and circumstances of the offense, 18 USC §3553(a)(1).  To that end, Mr. Chambers has explained his involvement in this offense was not motivated by greed.  This is not a healthcare fraud or mortgage fraud offense in which the defendant was living in an expensive house, driving a luxury automobile, and purchasing expensive clothing and jewelry.   This is an offense in which this defendant served his country honorably and, without incident until this offense, dealt with some of the highways most horrific scenes as a State Trooper while taking home $1961.37 a month.  And with that said, Mr. Chambers, immediately when first confronted by law enforcement, accepted responsibility for his involvement in this offense and began his

cooperation with the Government.  He remains  profoundly remorseful.

Subsequent to *Booker,* this Court must also consider the history and characteristics of the defendant, 18 USC § 3553(a)(1).  Mr.  Chambers is a 41 year old first-time offender with five children who all mean the world to him.   He has admitted he could not live on his net income after deductions for taxes, insurance and child support and illegally enriched himself about $40,000 during the offense. As a result, he has lost his career, his pension, what money he had left, and his marriage.

Assistant Attorney General Lanny A. Breuer spoke to the National District Attorneys Association Summer Conference on July 23, 2012 and stated, in part.....

> "The fiscal climate of the past several years, however, has led to significant cuts in state and local government spending, including on criminal justice initiatives. At the Justice Department, our budget has remained essentially flat, and we have been operating under a general hiring freeze since January 2011, which means that we are challenged in filling vacant positions for investigators, prosecutors and other necessary law enforcement personnel.   This places additional burdens on current employees and, given natural attrition, means that, over time, our resources will be stretched even thinner.

> "At the same time that federal criminal justice spending has stayed roughly flat, the number of federal prisoners has increased, and our prison and detention spending has increased along with it.  This has resulted in prison and detention spending crowding out other criminal justice investments, including aid to state and local law enforcement and spending on prevention and intervention programs.

> "According to BOP, the growth of the federal inmate population has negatively affected inmates, staff, and infrastructure, but BOP has acted within its authority to help mitigate the effects of this growth.   BOP officials reported increased use of double and triple bunking, waiting lists for education and drug treatment programs and limited meaningful work opportunities, and increased inmate-to-staff ratios. These factors, taken together, contribute to increased inmate misconduct, which negatively affects the safety and security of inmates

and staff.   BOP officials and union representatives voiced concerns about a serious incidents occurring.   To manage the growing population, BOP staggers meal times and segregates inmates involved in disciplinary infractions, among other things.

"Beyond moves in the right direction toward sentencing and prison reform, the above provides more useful ammunition to argue against a claimed 'need' for incarceration, particularly for first-time and non-violent offenders.   It can also be used to buttress a request for a structured community-based sanction in lieu of imprisonment."

Finally, Mr. Chambers has been accused of and pled to a felony offense that has subjected him to embarrassment, ridicule, and shame with respect to his admission to the offense. He has formerly enjoyed the pleasures and privileges of citizenship. Certain of those privileges will now be curtailed, if not forbidden. He will be barred from serving on a jury, his ability to travel will be limited, his business opportunities as well as employment will be forever hindered.   Mr. Chambers will always be a convicted felon.  This may be the harshest punishment of all. It will never go away. It will be a permanent status.  The pristine image that that he portrayed for his children as a role model has been forever tarnished.  With that said, he asks this Court to consider a non-custodial sentence which includes a long period of house arrest and community service as special conditions of a probationary sentence.   Such a sentence will allow Mr. Chambers to return to the workforce, support his children, and remain a part of their lives.  This Court will never see Mr. Chambers again.

Kirk Chambers and  Counsel thank this Court for considering  our Response to the PSR and Request for a Non-Custodial  Sentence.  Counsel will have further remarks at the time of sentencing.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on August 6, 2015, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing

document is being served this day on AUSA Anthony Lacosta and U.S. Probation Officer

Kathryn Gomez in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

HAGER & SCHWARTZ, P.A.
2450 Hollywood Blvd., Suite 105
Hollywood, FL 33020
(954) 926-0202 Telephone
(954) 926-010 Facsimile
jhager@defendyourcase.com

*JOHN S. HAGER*

By: _____
      JOHN S. HAGER, ESQ.
      FLA. BAR NO 0173967

You're Honor,

My name is Rebecca Perez. I am the proud mother of Saxony Chambers. She is 7 years old and Jayden Chambers. He is 4 years old and Nevaeh chambers who is biologically not Kirks but He has been the only father she has known since birth and She is now 8 years old. He also provides for her which is not court ordered. He has been a wonderful father. He stepped up when Neveah's real dad would not and you would never know that Kirk was not her father.

I share parental duties with Mr. Kirk Chambers. Kirk has been a provider for all 3 them financially and emotionally. He talks to them every morning and night before bed. This unfortunate situation has weighted heavily on our kids. Kirk paid child support in the amount of 700.00 a month and was always on time. Since he has lost his job he has not been able to provide for his children, which has put a financial struggle on me. I am asking You're Honor to have leniency on Mr. Chambers for the sake of his children who need him and his support. I am a mother of 6 and I have 1 full time job and had to get a second job just too somewhat make it without his support. I am lucky to get 20 hours of sleep a week and now I have less time with my children.

Kirk is very involved with his children. He gets them every summer and every other holiday. And if in between the kids want to see him then we plain and meet half way. Kirk is a very loving and caring person. I am afraid of how this will emotionally hurt our children if he has to serve time. Please I am asking for your consideration when making a decision for the sake of our children.

I have known him since 2004 and we were together for 9 years. Although we went our ways we still remain good friends. I would love to have been there in person to support him during this time but financially I cannot afford the trip. If you have any further questions please feel free to contact me anytime at 678-830-5972.

Thank You For Your Consideration,

Sincerely,

Rebecca Perez

Rebecca Prey.

## TO WHOM IT MAY CONCERN

My name is Denise Chambers and I am the wife of Kirk Chambers. I met Kirk in March 2012 and we got married December of the same year. Kirk may not have been the perfect husband but he was a good husband nonetheless. He was a great influence on my kids, two of which joined the military because of him. Troy my eldest is currently doing encryption at Ft Irwin in California and my other son Kyle is doing Opthamology in the Navy in Guam. I was a single mother to my kids until I met Kirk and he became the father figure that they needed and fit in the role effortlessly. I have watched him with his biological kids and have seen how awesome of a father he is to them. He was the sole breadwinner in his previous relationship taking care of his 2 biological plus his ex's 4 as well as her and her mother.

I was not with him when he was doing what he is being accused of and I am certain he did not participate in any wrongdoings when we were together as he was not in need of anything.

I can honestly tell you that Kirk Chambers is the most caring individual that I know and had a lapse of judgment that may have caused him to fall by the wayside. While my opinion may not mean much I do not think he intentionally wanted to get himself in the predicament he is in at this moment and I can surely say he has learnt his lesson.

Please be lenient on him as he has 3 children that need him, his support and guidance.

Thank you

Denise Chambers
16182 SW 15th Street
Pembroke Pines, Fl 33027
305-747-5526



**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**EMPLOYEE EARNINGS STATEMENT**

ALTERATION OF THIS DOCUMENT FOR THE PURPOSES OF COMMITTING
FRAUD MAY RESULT IN CRIMINAL PROSECUTION AND/OR DISMISSAL

**KIRK A CHAMBERS**

Id Number = XXX - XX - 6960   Pay Date = 7/3
Pay Period = 7/1/2014 - 7/31/2014   Retirement Co
Number of Allowances = 6   EFT No. = 023
Marital Status = MARRIED

|  | THIS PAYMENT | YTD PAYMENTS |
|---|---|---|
| REGULAR WAGES | 4,039.15 | 27,239.05 |
| OTHER AMOUNTS: |  |  |
| UNIFORM ALLOWANCES | 0.00 | 250.00 |
| TOTAL INCOME | 4,039.15 | 27,489.05 |
| LESS: |  |  |
| MEDICARE TAX | 54.94 | 373.19 |
| SOCIAL SECURITY | 234.91 | 1,595.71 |
| WITHHOLDING TAX | 98.86 | 616.58 |
| OTHER DEDUCTIONS | 1,689.07 | 8,292.47 |
| NET PAY: | 1,961.37 | 16,611.10 |
| STATE HEALTH INS-EMPLOYER CONTRIB | 1,264.06 | 8,618.58 |
| STATE LIFE INS-EMPLOYER CONTRIB | 4.54 | 31.78 |
| DEDUCTIONS: |  |  |
| 49 PTB STATE HEL INS-FT EMP'E CTRB | 180.00 | 1,260.00*** |
| 80 FLA RET SYSTEM-EMPLOYEE CONTRIB. | 121.17 | 817.17*** |
| 103 PRETAX DENTAL INSURANCE | 70.26 | 491.82*** |
| 285 CAPITAL INSURANCE - LIFE | 77.64 | 543.48 |
| 487 FIRST FLORIDA CREDIT UNION | 50.00 | 350.00 |
| 544 BROKEN SPOKE CLUB | 2.00 | 14.00 |
| 600 COURT ORDERED SUPPORT | 1,150.00 | 4,550.00 |
| 658 PBA FLORIDA HIGHWAY PATROL UNIT | 38.00 | 266.00 |

\* Employer Not Required to Withhold Tax      \*\* Items Not in Net Pay      \*\*\* Tax Sheltered

[CHAMBERS, KIRK   0234058 7/31/2014   1961.37   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

Tuesday, July 14, 2015 AOL: MHBConsulting



**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**EMPLOYEE EARNINGS STATEMENT**

ALTERATION OF THIS DOCUMENT FOR THE PURPOSES OF COMMITTING
FRAUD MAY RESULT IN CRIMINAL PROSECUTION AND/OR DISMISSAL

| **KIRK A CHAMBERS** | | |
|---|---|---|
| Id Number = XXX - XX - 6960 | | Pay Date = 8/2 |
| Pay Period = 8/1/2014 - 8/31/2014 | | Retirement Co |
| Number of Allowances = 6 | | EFT No. = 046 |
| Marital Status = MARRIED | | |

| | THIS PAYMENT | YTD PAYMENTS |
|---|---|---|
| REGULAR WAGES | 4,039.15 | 31,278.20 |
| OTHER AMOUNTS: | | |
| UNIFORM ALLOWANCES | 0.00 | 500.00 |
| TOTAL INCOME | 4,039.15 | 31,778.20 |
| LESS: | | |
| MEDICARE TAX | 54.94 | 431.75 |
| SOCIAL SECURITY | 234.91 | 1,846.12 |
| WITHHOLDING TAX | 98.86 | 740.44 |
| OTHER DEDUCTIONS | 1,689.07 | 9,981.54 |
| NET PAY: | 1,961.37 | 18,778.35 |
| STATE HEALTH INS-EMPLOYER CONTRIB | 1,264.06 | 9,882.64 |
| STATE LIFE INS-EMPLOYER CONTRIB | 4.54 | 36.32 |
| DEDUCTIONS: | | |
| 49 PTB STATE HEL INS-FT EMP'E CTRB | 180.00 | 1,440.00*** |
| 80 FLA RET SYSTEM-EMPLOYEE CONTRIB. | 121.17 | 938.34*** |
| 103 PRETAX DENTAL INSURANCE | 70.26 | 562.08*** |
| 285 CAPITAL INSURANCE - LIFE | 77.64 | 621.12 |
| 487 FIRST FLORIDA CREDIT UNION | 50.00 | 400.00 |
| 544 BROKEN SPOKE CLUB | 2.00 | 16.00 |
| 600 COURT ORDERED SUPPORT | 1,150.00 | 5,700.00 |
| 658 PBA FLORIDA HIGHWAY PATROL UNIT | 38.00 | 304.00 |

* Employer Not Required to Withhold Tax    ** Items Not in Net Pay    *** Tax Sheltered

[CHAMBERS, KIRK   0469810 8/29/2014   1961.37   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

Tuesday, July 14, 2015 AOL: MHBConsulting



**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**EMPLOYEE EARNINGS STATEMENT**

ALTERATION OF THIS DOCUMENT FOR THE PURPOSES OF COMMITTING
FRAUD MAY RESULT IN CRIMINAL PROSECUTION AND/OR DISMISSAL

**KIRK A CHAMBERS**

Id Number = XXX - XX - 6960
Pay Period = 9/1/2014 - 9/30/2014
Number of Allowances = 6
Marital Status = MARRIED

Pay Date = 9/3
Retirement Co
EFT No. = 070

| | THIS PAYMENT | YTD PAYMENTS |
|---|---|---|
| REGULAR WAGES | 4,039.15 | 35,317.35 |
| OTHER AMOUNTS: | | |
| UNIFORM ALLOWANCES | 0.00 | 500.00 |
| TOTAL INCOME | 4,039.15 | 35,817.35 |
| LESS: | | |
| MEDICARE TAX | 54.94 | 486.69 |
| SOCIAL SECURITY | 234.91 | 2,081.03 |
| WITHHOLDING TAX | 98.86 | 839.30 |
| OTHER DEDUCTIONS | 1,689.07 | 11,670.61 |
| NET PAY: | 1,961.37 | 20,739.72 |
| STATE HEALTH INS-EMPLOYER CONTRIB | 1,264.06 | 11,146.70 |
| STATE LIFE INS-EMPLOYER CONTRIB | 4.54 | 40.86 |

**DEDUCTIONS:**

| | | |
|---|---|---|
| 49 PTB STATE HEL INS-FT EMP'E CTRB | 180.00 | 1,620.00*** |
| 80 FLA RET SYSTEM-EMPLOYEE CONTRIB. | 121.17 | 1,059.51*** |
| 103 PRETAX DENTAL INSURANCE | 70.26 | 632.34*** |
| 285 CAPITAL INSURANCE - LIFE | 77.64 | 698.76 |
| 487 FIRST FLORIDA CREDIT UNION | 50.00 | 450.00 |
| 544 BROKEN SPOKE CLUB | 2.00 | 18.00 |
| 600 COURT ORDERED SUPPORT | 1,150.00 | 6,850.00 |
| 658 PBA FLORIDA HIGHWAY PATROL UNIT | 38.00 | 342.00 |

* Employer Not Required to Withhold Tax      ** Items Not in Net Pay      *** Tax Sheltered

[CHAMBERS, KIRK   0708468 9/30/2014   1961.37   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

Tuesday, July 14, 2015 AOL: MHBConsulting